1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOU LIM,

        Plaintiff,

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendants.

_____/

No. C 06-03525 CRB

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF'S MOTION
FOR REMAND AND DENYING
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

Now before the Court are Plaintiff's Motion for Summary Judgment seeking reversal of the decision of the Social Security Commissioner (the "Commissioner") denying benefits, or in the alternative seeking remand for further administrative proceedings, and Defendant's Cross-Motion for Summary Judgment seeking affirmation of the Commissioner's decision. For reasons set forth below, the Court GRANTS Plaintiff's motion for reversal and remand, and DENIES Defendant's cross-motion.

## I. BACKGROUND

### A.   Procedural History

Plaintiff Thou Lim ("Plaintiff") filed an application for Supplemental Security Income ("SSI") under title XVI of the Social Security Act, on May 27, 2003. (Administrative Record "A.R." at 260-66.) Plaintiff's application was denied by the Commissioner on November 17, 2003. (A.R. at 29, 31-34, 268-72.) Plaintiff timely filed a request for

**United States District Court**
For the Northern District of California

1  reconsideration on December 22, 2003, (A.R. at 35), which was denied on May 11, 2004.

2  (A.R. at 30, 36, 273-77.)  Plaintiff then filed a request for hearing, which was held on April

3  12, 2005.  (A.R. at 288-312.)  In a decision dated August 22, 2005, an Administrative Law

4  Judge ("ALJ") for the Social Security Administration ruled against Plaintiff.  (A.R. at 11-27.)

5  Following the ALJ's decision, Plaintiff filed a request for review of hearing decision.  (A.R.

6  at 10.)  On April 21, 2006, a Notice of Appeals Council Action was issued indicating that no

7  reason was found to review the ALJ's decision.  (A.R. at 6-8.)  Plaintiff now brings this

8  action for judicial review pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

9  **B.    Factual Background**

10       **1.    Plaintiff's Disability Claim**

11       Plaintiff Thou Lim was born on January 2, 1966, in Cambodia.  (A.R. at 263.)

12  Plaintiff has no education and her work experiences consist of employment as an office

13  cleaner, assembly line worker, and janitor.  (A.R. at 15.)

14       Plaintiff alleges disability due to depression and anxiety.  Id.  She has not engaged in

15  substantial gainful activity since the alleged onset date of May 27, 2003.  Id.  However,

16  according to the record, plaintiff began seeking medical help for her symptoms as early as

17  February 2003.  (A.R. at 208-09.)

18       **2.    Medical Evidence**

19            **a.    Primary Care Provider**

20       On April 7, 2003, Plaintiff visited the Alameda County Medical Center where she was

21  seen by William Wallin, M.D.  (A.R. at 166-68.)  Noting that her eyes were teary and hands

22  sweaty, Dr. Wallin diagnosed Plaintiff with Post Traumatic Stress Disorder ("PTSD").  Id.

23  Dr. Wallin saw Plaintiff again on June 9, 2003, where, while noting that Plaintiff appeared

24  "less nervous," he again diagnosed her with PTSD.  Id.  The PTSD diagnosis was carried

25  forward to August 20, 2003, when an examining physician at the Alameda County Medical

26  Center apparently queried whether Plaintiff suffered from PTSD or depression.  (A.R. at 183-

27  85.)  As part of the physician's clinical impression, Plaintiff was referred to Asian Mental

28  Health Services.  Id.

United States District Court
For the Northern District of California

According to the record, Plaintiff visited the Alameda County Medical Center an additional five times between October 2003 and June 2004.  (A.R. at 182, 252-53.)  The examining physicians from both the March and June 2004 visits noted depression in their respective progress records.  (A.R. at 252-53.)

Following her June 2004 visit, Plaintiff apparently made no further visits to the Alameda County Medical Center despite making appointments for September and November 2004.  (A.R. at 250-51.)

**b.    The Treating Therapist**

On February 11, 2003, Plaintiff visited a community mental health clinic where she was referred to Mona Afary, Ph.D., a licensed marriage and family therapist.  (A.R. at 208-09, 258-59.)  On March 7, 2003, Dr. Afary diagnosed Plaintiff with PTSD.  (A.R. at 204-07.)  This diagnosis was carried forward to June 30, 2003, when Dr. Afary added depression to her diagnosis and indicated that Plaintiff had a "poor" prognosis.  (A.R. at 199-203.)  In addition, Dr. Afary noted that Plaintiff had poor memory, difficulty with concentration, poor judgment, and could not follow simple instructions.  Id.  Dr. Afary also opined that Plaintiff would not be able to interact with supervisors or coworkers, or be able to maintain schedules.  Id.

On September 9, 2003, Dr. Afary noted that Plaintiff suffered from a depressed affect and appeared withdrawn.  (A.R. at 194-98.)  Dr. Afary also noted that Plaintiff's memory and concentration were markedly impaired and that her prognosis for recovery sufficient to sustain regular gainful employment was very poor.  Id.  A similar report was made on April 16, 2004, when Dr. Afary opined that Plaintiff could not sustain employment due to her inability to keep attendance, schedules, or deal with stresses common to the work environment.  (A.R. at 189-93.)

**c.    The Psychiatric Evaluation**

On October 27, 2003, Plaintiff underwent a psychiatric evaluation conducted by Michael Zizmor, M.D., who was hired by the state agency.  (A.R. at 177-80, 232.)  Among the results of Dr. Zizmor's mental status examination were that Plaintiff was alert but not

United States District Court
For the Northern District of California

1    oriented; that her long-term memory appeared intact but she could recall only one of three

2    items after five minutes; that she was unable to follow a three-step command; that her mood

3    was depressed and anxious; and that her affect appeared depressed.  (A.R. at 177-80, 232.)

4    Dr. Zizmor further opined that Plaintiff would have severe difficulties understanding and

5    carrying out simple one or two-step job instructions, moderate to severe problems

6    understanding supervisor's instructions, and significant problems negotiating an eight-hour

7    work day or 40-hour work week because of her PTSD and major depressive disorder.  Id.

8              **3.      Plaintiff's Testimony**

9         At the hearing, Plaintiff testified that she lives with her four children and receives

10   AFDC (Aid to Families with Dependent Children) support.  (A.R. at 293.)  Plaintiff further

11   testified that on a typical day, she would see her children off to school, clean up around the

12   house and prepare some meals.  Id.  Afterward, she would spend time playing with her

13   youngest child until the others returned from school, at which point she would prepare meals

14   for them.  Id.  Plaintiff also testified that, on occasion, one of her friends would pick her up

15   and take her places.  (A.R. at 294-95.)

16        As to her health limitations, Plaintiff testified that she sees a doctor for depression,

17   that she fears falling asleep, that she has difficulty breathing and that she has difficulty

18   recalling things.  (A.R. at 296-99.)

19             **4.      Vocational Expert Testimony**

20        A vocational expert at the hearing testified that a claimant with severe problems

21   following a supervisor's instructions would be eliminated from "all jobs," while moderate

22   problems following instructions might have considerably less effect on a claimant.  (A.R. at

23   311-12.)  The vocational expert also testified that a claimant with significant problems

24   negotiating an eight-hour work day or 40-hour work week "should not be competitive

25   enough to make money."  Id.

26   //

27   //

28   //

4

1

**II.  LEGAL STANDARD**

2

**A.      Standard of Review**

3

The Court's jurisdiction is limited to determining whether the Social Security

4

Administration's denial of benefits is supported by substantial evidence in the administrative

5

record.  42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if

6

it is not supported by substantial evidence or if the decision is based on legal error.  Andrews

7

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th

8

Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but

9

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

10

adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  Determinations of credibility,

11

resolution of conflicts in medical testimony and all other ambiguities are to be resolved by

12

the ALJ.  Andrews, 53 F.3d at 1039; Magallenes, 881 F.2d at 750.  The decision of the ALJ

13

will be upheld if the evidence is "susceptible to more than one rational interpretation."

14

Andrews, 53 F.3d at 1040.

15

**B.      The ALJ's Decision**

16

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step

17

sequential inquiry.  20 C.F.R. § 416.920.  At the first step, the ALJ considers if the claimant

18

is engaged in substantial gainful activity; if the claimant is not engaged in substantial gainful

19

activity, the second step asks if the claimant has a severe impairment (i.e. an impairment that

20

has a significant effect on the claimant's ability to function); if the claimant has a severe

21

impairment, the third step asks if the claimant has a condition which meets or equals the

22

conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the

23

"Listings"); if the claimant does not have such a condition, the fourth step asks if the

24

claimant is capable of performing his past relevant work; if the claimant is not capable of

25

performing his past relevant work, the fifth step asks if the claimant is capable of performing

26

other work which exists in substantial numbers in the national economy.  20 C.F.R. §§

27

404.1520(b)-404.1520(f)(1).

28

United States District Court
For the Northern District of California

The ALJ in this case found Plaintiff not "disabled" within the meaning of the Social Security Act. (A.R. at 24.) The ALJ based his conclusion on his determination that Plaintiff has the residual functional capacity ("RFC") to perform simple repetitive tasks. (A.R. at 17-23.) In making his RFC determination, the ALJ disregarded all of the medical opinions from examining sources contained in the record, all of which concluded that Plaintiff would have significant problems engaging in substantial gainful employment because of her mental condition. Id. The ALJ also disregarded Plaintiff's own testimony as to the severity of her limitations. Id.

## III.  DISCUSSION

Plaintiff essentially makes three separate yet related claims. First, Plaintiff claims that the ALJ's rejection of the medical opinions contained in the record was not supported by substantial evidence. Next, Plaintiff claims the ALJ improperly discredited Plaintiff's testimony by failing to consider the record as a whole and by failing to provide clear and convincing reasons. Finally, Plaintiff claims the ALJ's RFC determination was not supported by substantial evidence.

The Court agrees with Plaintiff's claim that the ALJ's RFC determination was not supported by substantial evidence. It should be noted, however, that the Court's discussion of Plaintiff's third claim will also involve discussion of the other two claims.

**A.   The ALJ's Determination of Plaintiff's RFC**

All of the evidence contained in the record consistently establishes that Plaintiff suffers from PTSD and/or depression. Indeed, the ALJ does not dispute that Plaintiff suffers from depression at all; despite ultimately determining that Plaintiff is not "disabled" within the meaning of Title VII, the ALJ did find that Plaintiff's depression constitutes a "severe" impairment within the meaning of the Social Security regulations. (A.R. at 16.) Therefore, the only evidence at issue is that relating to the severity of Plaintiff's depression. Yet here, too, all of the evidence contained in the record–the medical opinion evidence and Plaintiff's testimony–is consistent. (A.R. at 17-19.) The ALJ did not point to any affirmative, let alone substantial, evidence to support his RFC determination that Plaintiff can perform simple

repetitive tasks; instead, the ALJ only discredited the uniform evidence that Plaintiff would have significant problems engaging in substantial gainful employment.  As discussed further below, the ALJ's decision to discredit the uncontradicted medical evidence and Plaintiff's testimony was improper.  Accordingly, the Court concludes that the ALJ did not based his RFC determination on substantial evidence in the record.

**1.    The Medical Evidence**

In making his RFC determination, the ALJ gave little weight to the conclusions of Dr. Zizmor, the evaluating psychiatrist, and Dr. Afary, the treating therapist, who both opined that Plaintiff would have significant problems engaging in substantial gainful employment because of her mental condition.  While the ALJ is not obliged to adopt any medical opinions on Plaintiff's limitations, 20 C.F.R. § 404.1527(c), the ALJ may reject uncontroverted medical opinions only for clear and convincing reasons.  Shalala, 53 F.3d at 1041 (noting that the uncontroverted opinions of either examining or treating physicians may be rejected only for clear and convincing reasons).  The Court finds that the ALJ did not state clear and convincing reasons for rejecting the medical opinions of Dr. Zizmor and Dr. Afary.

**a.    Dr. Zizmor's Opinion**

Dr. Zizmor, the psychiatrist retained by the state agency, opined that Plaintiff would have significant problems negotiating an eight-hour work day and 40-hour work week because of her PTSD and depression.  (A.R. at 180.)  The ALJ rejected this conclusion for several reasons.  First, the ALJ pointed to Dr. Zizmor's opinion that Plaintiff's lack of education, illiteracy, and inability to understand English would cause her severe difficulties understanding and carrying out simple one or two-step job instructions.  (A.R. at 20.)  The ALJ concluded that this opinion was not necessarily true because Plaintiff admitted and demonstrated at the hearing that she understands some English.  Id.  On this basis, the ALJ questioned the premise underlying Dr. Zizmor's opinion that Plaintiff is severely functionally impaired.  Id.  Looking more closely at Dr. Zizmor's report, however, it becomes apparent that the ALJ misconstrued Dr. Zizmor's conclusion; Dr. Zizmor actually concluded that Plaintiff's difficulties following instructions were "because of her depression and PTSD," not

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  because of her limited ability to speak English.  (A.R. at 180.)  Therefore, Plaintiff's ability

2  to speak some English does not undermine Dr. Zizmor's opinion.

3       Next, the ALJ determined that Dr. Zizmor's opinion that Plaintiff is severely

4  functionally impaired is undercut by Plaintiff's modest work history and the fact that she has

5  never left a job due to any impairment.  (A.R. at 20-21.)  Yet the ALJ elsewhere in his

6  opinion stated that Plaintiff had not engaged in substantial gainful activity since her alleged

7  onset date.  (A.R. at 15.)  Accordingly, this is not a clear and convincing reason.

8       The ALJ also discredited Dr. Zizmor's medical opinions about Plaintiff because Dr.

9  Zizmor apparently did not observe any behavioral oddities,[1] included no discussion of PTSD

10  criteria, and noted that there was no loosening of association.  (A.R. at 21.)  The lack of such

11  discussions in Dr. Zizmor's report may go to the weight of his medical opinion, but is not a

12  clear and convincing reason for wholly disregarding the opinion, especially where it is

13  consistent with all other evidence in the record.  20 C.F.R. §§ 404.1527(c)(1), (3); see also

14  Robbins v. SSA, 466 F.3d 880, 883 (9th Cir. 2006) (noting that an ALJ may not disregard

15  claimant's testimony solely because it is not substantiated affirmatively by objective medical

16  evidence).

17       Finally, the ALJ rejected Dr. Zizmor's opinions because they were based on

18  Plaintiff's self-reported symptoms, and the ALJ did not find the Plaintiff credible.  (A.R. at

19  21.)  While such credibility determinations are within the province of the ALJ, Magallanes,

20  881 F.2d at 750, and a plaintiff's statements alone are not sufficient to establish that there is a

21  mental impairment, 20 C.F.R. § 404.12528(a), self-reported symptoms may be incorporated

22  into a medical source opinion reflecting judgments about the nature and severity of a given

23  impairment.  20 C.F.R. § 404.12527(a)(2).

24       In any event, Dr. Zizmor did not rely solely on Plaintiff's self-reported symptoms.  In

25  conducting his mental status examination, Dr. Zizmor made various observations and

26

27  _____

28  [1]The ALJ actually wrote that "[Dr. Zizmor] noted no behavioral oddities," which might imply that Dr. Zizmor affirmatively wrote in his report that Plaintiff exhibited no behavioral oddities.  The report, however, reveals that Dr. Zizmor made no mention of behavioral oddities one way or the other.  (A.R. at 177-80.)

8

United States District Court
For the Northern District of California

judgments about Plaintiff, such as that Plaintiff was alert but not oriented; that she could recall only one of three items after five minutes; and that her affect appeared depressed. (A.R. at 179.)  That the ALJ did not find Plaintiff credible may affect the weight of Dr. Zizmor's medical opinion evidence, but it does not nullify the evidence.  Dr. Zizmor's medical opinion is evidence just the same.  What is more, it is evidence consistent with the rest of the record, and the ALJ did not provide any clear and convincing reasons for disregarding it.[2]

**b.     Dr. Afary's Opinion**

Dr. Afary opined that Plaintiff's memory and concentration were markedly impaired, and that her prognosis for recovery sufficient to sustain regular gainful employment was very poor.  (A.R. at 194-98.)  As with Dr. Zizmor, the ALJ cited various reasons for giving Dr. Afary's reports "very little weight."  First, the ALJ discounted Dr. Afary's opinion because her findings were "suspect."  (A.R. at 20.)  The only evidence the ALJ cited in support of this proposition was Dr. Afary's September 9, 2003 report in which she first noted that Plaintiff's memory and concentration were "markedly impaired," and then, two pages later, noted that Plaintiff's memory and concentration were "impaired."  (A.R. at 195, 197.)  This alleged discrepancy is not a clear and convincing reason for rejecting Dr. Afary's opinion.

The ALJ was also troubled by Dr. Afary's findings because they were accompanied by little to no objective clinical evidence.  (A.R. at 19.)  As an example, he noted that while Dr. Afary's diagnosis of PTSD was due to Plaintiff's traumatic experiences in Cambodia, the only evidence of PTSD symptoms were Plaintiff's statements that she longed to hear from her family and wished they were still alive.  Id.  The ALJ was also troubled that Dr. Afary's

---

[2]Plaintiff notes in her Reply brief that the only conflicting medical opinion in the entire record is the non-examining state agency opinion finding that Plaintiff has no medically determinable impairment.  (A.R. at 241-48.)  The ALJ, however, did not rely on this opinion as a basis for determining Plaintiff's RFC.  In addition, the Court agrees with Plaintiff that such an opinion does not constitute substantial evidence in light of the overwhelmingly consistent treating and examining medical opinions.  See Pitzer v. Sullivan, 908 F.2d 502, 506, n.4 (9th Cir. 1990) ("The nonexamining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.").

1   conclusion that Plaintiff is unable to follow and understand simple written or oral instructions

2   was not accompanied by test results.  (A.R. at 20.)

3       The ALJ gave several other examples of conclusions made by Dr. Afary that were not

4   accompanied by test results.  (A.R. at 19-20.)  However, it is not necessary to analyze each

5   one individually.  The mere lack of objective medical evidence is not a clear and convincing

6   reason for disregarding an uncontradicted medical opinion.  See Robbins, 466 F.3d at 883

7   (noting that an ALJ may not disregard claimant's testimony solely because it is not

8   substantiated affirmatively by objective medical evidence).  In any event, the ALJ overlooks

9   that while Dr. Afary did not provide any objective medical evidence, such as a mental status

10  examination, Dr. Zizmor did.  The ALJ was required to consider all of the medical opinions

11  together along with other relevant evidence in the record.  20 C.F.R. § 404.1527(b).

12      Because the ALJ did state any clear and convincing reasons for disregarding the

13  uncontradicted opinions of Dr. Afary and Dr. Zizmor, the Court finds that the ALJ

14  improperly discredited their medical opinions in determining Plaintiff's RFC.

15          **2.      Plaintiff's Testimony**

16      In making his RFC determination, the ALJ also discounted portions of Plaintiff's

17  testimony as not credible due to various alleged inconsistencies.  An ALJ has the authority to

18  determine whether a claimant's testimony is credible.  See Bunnell v. Sullivan, 947 F.2d 341,

19  345-46 (9th Cir. 1991) (en banc).  However, unless an ALJ makes a finding of malingering

20  based on affirmative evidence thereof, the ALJ may only find an applicant not credible by

21  making specific findings as to credibility and stating clear and convincing reasons for each.

22  Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

23      The first inconsistency the ALJ noted was Plaintiff's failure to mention all symptoms

24  to every examining and treating medical source; stated differently, the ALJ was apparently

25  troubled by Plaintiff's failure to document every symptom equally in every portion of her

26  medical record.  (A.R. at 21.)  As an example, the ALJ points to Plaintiff's failure to tell

27  investigators from the Cooperative Disability Investigations Unit about her auditory

28  hallucinations, traumatic history or other symptoms she mentioned to Dr. Afary and Dr.

**United States District Court**
For the Northern District of California

1   Zizmor. (A.R. at 21.) Given that there is no affirmative evidence in the record that Plaintiff

2   was malingering, the Court is unconvinced by the ALJ's stated reasons that such an

3   inconsistency is proper grounds for discounting Plaintiff's testimony.

4          Next, the ALJ took issue with Plaintiff's inability to pinpoint the date that her illness

5   became disabling.  Id.  For example, the ALJ noted that Plaintiff, on one occasion, alleged

6   first becoming ill 20 years prior, and then, on a different occasion, said 1993.  Id.  The only

7   relevant date, however, is the alleged disability onset date, which the ALJ accepted as May

8   27, 2003.  (A.R. at 15.) Keeping in mind that there is no affirmative evidence of

9   malingering, the Court is unconvinced by the ALJ's reasoning.  Statements that Plaintiff

10  became ill at any point prior to May 27, 2003, do not show that the disability onset date was

11  any different as that reported.

12         Finally, the ALJ found Plaintiff not credible because he believed there are

13  inconsistencies between her daily activities and her alleged limitations.  For example, the

14  ALJ found that Plaintiff's testimony about her daily activities–cleaning the house, cooking

15  for herself and her children–were inconsistent with her statements to Dr. Afary that she did

16  minimal cooking, shopping, and maintaining her residence.  (A.R. at 22.) The ALJ had a

17  similar problem with Plaintiff's claim that she spends most of her day in isolation, yet has no

18  problems meeting with her friend, talking on the phone almost every day, or seeing her

19  children off to school.  Id.  The ALJ's reasons are unconvincing.  The mere fact that Plaintiff

20  has carried on certain daily activities, such as grocery shopping, cooking, or limited walking

21  does not detract from her credibility as to her overall disability.  See Vertigan v. Halter, 260

22  F.3d 1044, 1050 (9th Cir. 1989) (explaining mere fact that plaintiff shopped for groceries,

23  drove a car, or did limited walking for exercise did not detract from credibility as to overall

24  disability because such activities did not consume a substantial part of plaintiff's day).

25  Plaintiff "does not need to be 'utterly incapacitated' in order to be disabled." Id.  The ALJ

26  does not provide clear and convincing reasons as to how Plaintiff's daily activities

27  demonstrate a lack of credibility or are inconsistent with plaintiff's claimed inability to work.

28         As with the medical opinion evidence, the ALJ did not state clear and convincing

11

United States District Court
For the Northern District of California

1    reasons for discounting Plaintiff's testimony as he did.  More importantly, the ALJ did not

2    point to any other evidence in the record to support his RFC determination, but only

3    discredited the evidence that was inconsistent with his determination that Plaintiff has the

4    RFC to perform simple repetitive tasks.

5    **B.    Remedy**

6          Having determined that the ALJ's RFC determination was not supported by

7    substantial evidence, the Court must now determine whether to remand the case for further

8    administrative proceedings or instead award benefits.  The decision whether to remand or to

9    award benefits is within the discretion of the court.  Lewin v. Schweiker, 654 F.2d 631, 635

10   (9th Cir. 1981).  If additional proceedings can remedy defects in the original administrative

11   proceedings, the case should be remanded.  Id.  On the other hand, where a rehearing would

12   only delay receipt of benefits, the court should award benefits.  Id.

13         This case presents a full record that supports the conclusion that Plaintiff is disabled.

14   The uncontroverted medical evidence establishes that Plaintiff would have severe problems

15   following one or two-step job instructions, moderate to severe problems understanding a

16   supervisor's instructions, and significant problems negotiating an eight-hour work day or 40-

17   hour work week.  In addition, the vocational expert testimony establishes that, given such

18   limitations, a claimant "should not be competitive enough to make money."  (A.R. at 311-

19   12.)  Remanding the case for further administrative proceedings would only delay Plaintiff's

20   receipt of benefits.  Accordingly, the Court concludes that Plaintiff is disabled and is entitled

21   to benefits.  See, e.g., Erickson v. Shalala, 9 F.3d 813, 819 (9th Cir. 1993) (ordering

22   judgment for plaintiff where all medical evidence and vocational expert testimony

23   established that plaintiff could not perform light work);  Penny v. Sullivan, 2 F.3d 953, 958-

24   59 (9th Cir. 1993) (ordering judgment for plaintiff where record wholly supported plaintiff's

25   claim of non-exertional pain and the Administration used medical-vocational guidelines

26   instead of vocational expert testimony, thereby failing to satisfy burden of showing that

27   plaintiff could perform other work).

28   //

**CONCLUSION**

The Court finds that the ALJ's decision is not supported by substantial evidence.  In addition, the Court finds that the record is fully-developed and establishes that Plaintiff is disabled and is entitled to benefits.

Accordingly, Plaintiff's motion for summary judgment is GRANTED and defendant's cross-motion for summary judgement is DENIED.  The decision of the Commissioner denying benefits is REVERSED, and the Court REMANDS the case for an award of benefits.

**IT IS SO ORDERED.**

Dated: April 3, 2007

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT

G:\CRBALL\2006\3525\Lim order.wpd          13

**United States District Court**
For the Northern District of California